## PUGET SOUND STEVEDORING CO. *v.* STATE TAX COMMISSION.

No. 68.   Argued October 13, 14, 1937.—Decided November 8, 1937.

*Mr. John Ambler,* with whom *Messrs. Ben C. Grosscup* and *Bernard H. Levinson* were on the brief, for appellant.

*Mr. E. P. Donnelly* for appellees.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A tax laid upon the business of a stevedoring company, the amount to be measured by a percentage of the gross receipts, has been sustained against the protest of the taxpayer that an unlawful burden is imposed thereby upon interstate and foreign commerce. We are to determine whether the tax is valid either altogether or in part.

A statute of the State of Washington provides that for the privilege of engaging in business activities within the state a tax shall be payable by persons so engaged, payment to be made according to a designated measure. As to certain forms of business, as, for example, manufacturing and sales at retail or wholesale, the measure is a specially prescribed percentage of the value of the products or the gross receipts of sales. As to all other forms of business there is a general provision that the tax shall be equal to the gross income of the business multiplied by the rate of one half of one per cent. Washington Laws 1935, c. 180. This general provision is broad enough to cover the business of a stevedore.

Appellant, the Puget Sound Stevedoring Company, is a Washington corporation. It is engaged in the general stevedoring business at Seattle and at other ports on Puget Sound. At times it contracts with a shipowner or shipmaster to load or discharge a vessel through its own employees, controlling and directing the work itself. The great mass of its business, as we were informed upon the argument, is done in that way. At times, however, even though comparatively infrequently, it makes a different kind of contract which changes essentially its relation to the ship. In this second form of contract it does not undertake to control, direct, or supervise the work. It "merely collects the longshoremen and supplies them to the vessel," advancing their pay at the completion of the

job and "billing the ship and her owner the amount of the pay-roll plus a commission for services." All vessels served by the appellants are engaged exclusively in interstate or foreign commerce.

A suit by the taxpayer to enjoin the tax officials of the state from proceeding to collect the tax was dismissed by the trial court after a hearing upon bill and answer, the answer not disputing the allegations of the bill. The Supreme Court of Washington affirmed the dismissal, its judgment being placed upon the ground that the taxpayer was an independent contractor engaged in a local business. 189 Wash. 131; 63 P. (2d) 532. The case is here upon appeal. 28 U. S. C. § 344.

1. The business of appellant, in so far as it consists of the loading and discharge of cargoes by longshoremen subject to its own direction and control, is interstate or foreign commerce.

Transportation of a cargo by water is impossible or futile unless the thing to be transported is put aboard the ship and taken off at destination. A stevedore who in person or by servants does work so indispensable is as much an agency of commerce as shipowner or master. "Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class 'as clearly identified with maritime affairs as are the mariners'." *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 62. No one would deny that the crew would be engaged in interstate or foreign commerce if busied in loading or unloading an interstate or foreign vessel. Cf. *Baltimore & O. S. W. R. Co.* v. *Burtch,* 263 U. S. 540. The longshoreman busied in the same task bears the same relation as the crew to the commerce that he serves. Indeed, for the purposes of the Merchant Marine Act (41 Stat. 988, 1007), a stevedore is a "seaman." *International*

*Stevedoring Co.* v. *Haverty,* 272 U. S. 50. A stipulation in the record tells us that any serious interruption in the service of such cargo handlers cripples at once the activities of a port and slows down and obstructs the free and steady flow of commerce. We might take judicial notice of the fact if the stipulation were not here.

What was done by this appellant in the business of loading and unloading was not prolonged beyond the stage of transportation and its reasonable incidents. Cf. *Baltimore & O. S. W. R. Co.* v. *Burtch, supra.* True, the service did not begin or end at the ship's side, where the cargo is placed upon a sling attached to the ship's tackle. It took in the work of carriage to and from the "first place of rest," which means that it covered the space between the hold of the vessel and a convenient point of discharge upon the dock. Sometimes, though not, it seems, under appellant's contracts, the work in the hold is done by members of the crew, and the work upon the dock by employees of the dock company. Sometimes the cost is absorbed by the vessel and sometimes billed as an extra charge to shipper or consignee. The fact is stipulated, however, that no matter by whom the work is done or paid for, "stevedoring services are essential to waterborne commerce and always commence in the hold of the vessel and end at the 'first place of rest,' and vice versa." In such circumstances services beginning or ending in the hold or on the dock stand on the same plane for the purposes of this case as those at the ship's sling. The movement is continuous, is covered by a single contract, and is necessary in all its stages if transportation is to be accomplished without unreasonable impediments. The situation thus presented has no resemblance to that considered in *New York ex rel. Pennsylvania R. Co.* v. *Knight,* 192 U. S. 21, 26, where an interstate railroad furnished its passengers with taxicab service to and from its terminus, the service being "contracted and paid for in-

dependently of any contract or payment for strictly interstate transportation."

The business of loading and unloading being interstate or foreign commerce, the State of Washington is not at liberty to tax the privilege of doing it by exacting in return therefor a percentage of the gross receipts. Decisions to that effect are many and controlling. *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 341–342; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Matson Navigation Co.* v. *State Board of Equalization,* 297 U. S. 441, 444; *Fisher's Blend Station* v. *Tax Commission,* 297 U. S. 650, 655. The fact is not important that appellant does business as an independent contractor as long as the business that it does is commerce immune from regulation by the states. What is decisive is the nature of the act, not the person of the actor. An independent contractor undertaking to navigate a vessel would have the same protection as a pilot agreeing to navigate it himself.

2. The business of appellant, in so far as it consists of supplying longshoremen to shipowners or masters without directing or controlling the work of loading or unloading, is not interstate or foreign commerce, but rather a local business, and subject, like such business generally, to taxation by the state.

What is done by appellant in connection with activities of this order is similar in many aspects to the work of a ship's chandler, and even more closely similar to that of a labor or employment bureau. Such a bureau was considered in *Williams* v. *Fears,* 179 U. S. 270, 278, and its business found to be no part of interstate or foreign commerce, though the transactions of such commerce were increased thereby. Cf. *Federal Compress Co.* v. *McLean,* 291 U. S. 17, 21, 22; *Chassaniol* v. *Greenwood,* 291 U. S. 584. Little analogy exists between the activities now

in question and those reviewed in *McCall* v. *California*, 136 U. S. 104; *Texas Transport & Terminal Co.* v. *New Orleans*, 264 U. S. 150; and *Di Santo* v. *Pennsylvania*, 273 U. S. 34. The contractors there considered were found to be acting as agents of foreign steamship companies with authority to make contracts binding on the principals and even running in their names. If appellant stands in that relation to the vessels that it serves in this branch of its activities, it has failed to make the fact apparent by the allegations of its bill. The effect of such a showing is not before us now.

The decree of the Supreme Court of Washington being erroneous to the extent here indicated and no farther is modified accordingly, the cause being remanded for further proceedings not inconsistent with the opinion of this court.

*Decree modified.*