34 Cal.2d 793 (1950)
MARTIN SHIP SERVICE CO. (a Corporation), Respondent,
v.
CITY OF LOS ANGELES et al., Appellants.
L. A. No. 20774. 
Supreme Court of California. In Bank. 
Feb. 28, 1950.
 Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and Lester L. Lev, Deputy City Attorney, for Appellants.
 Ball, Hunt & Hart and Joseph A. Ball for Respondents.
 TRAYNOR, J.
 Section 21.190 of the Municipal Code of the City of Los Angeles provides that "Every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Article, shall pay a license fee in the sum of $12.00 per calendar year or fractional part thereof for the first $12,000 or less of gross receipts, and in addition thereto, the sum of $1.00 per year for each $1,000 or fractional part thereof, of gross receipts in excess of $12,000." [1] Payment of the license tax is a condition precedent to engaging in the enumerated occupations. [fn. *] It is therefore exacted for the privilege of carrying on an occupation, and is measured by *795 the gross receipts derived therefrom. (Union Pac. R. R. Co. v. City of Los Angeles, 53 Cal.App.2d 825, 830 [128 P.2d 408].)
 Plaintiffs are independent contractors engaged exclusively in furnishing maintenance and repair services to ships employed only in interstate and foreign commerce while those ships are tied to docks or anchored in the harbors of Los Angeles, Newport-Balboa, Long Beach, San Diego, and Port Hueneme. The services consist of painting the ships, removing scale, cleaning tanks, chain lockers and boilers, removing ballast, sandblasting ships' sides, and handling ships' stores by taking them from trucks of provision merchants at the dock, trucking them from the dock onto the ships and placing them in storerooms on board. Only gross receipts from these services on ships anchored or docked in Los Angeles harbor are included in the measure of the tax.
 Plaintiffs brought these actions for declaratory relief, contending that the license tax as applied to them is unconstitutional on the ground that it unduly burdens interstate and foreign commerce and is therefore prohibited by the commerce clause of the United States Constitution. From a judgment declaring the tax as applied to plaintiffs unconstitutional and permanently enjoining its collection, defendant city appeals.
 [2] It is undisputed that plaintiffs are engaged in local activities essential to interstate commerce. These activities are subject to regulation by Congress under the power granted to it by the commerce clause of the United States Constitution. (National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37-41 [57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352]; United States v. Darby, 312 U.S. 100, 113 [61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430]; Second Employers' Liability Cases, 223 U.S. 1, 51 [32 S.Ct. 169, 56 L.Ed. 327]; Southern Pacific Co. v. Pillsbury, 170 Cal. 782, 790 [151 P. 277, L.R.A. 1916E 916].) [3] In the absence of contrary Congressional action, however, the state may regulate or tax such activities so long as the regulation or tax does not unduly burden that commerce. (South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 184-185 [58 S.Ct. 510, 82 L.Ed. 734]; Aero Mayflower Transit Co. v. Board of R. R. Comm'rs, 332 U.S. 495, 502-503 [68 S.Ct. 167, 92 L.Ed. 99]; Bob-Lo Excursion Co. v. Michigan, 333 U.S. 28, 37-39 [68 S.Ct. 358, 92 L.Ed. 455].) The validity of the tax therefore does not depend solely on whether plaintiffs' activities are *796 interstate or intrastate commerce. "In a case like this nothing is gained and clarity is lost, by not starting with recognition of the fact that it is interstate commerce which the state is seeking to reach and candidly facing the real question whether what the State is exacting is a constitutionally fair demand by the State for that aspect of the interstate commerce to which the State bears a special relation." (Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 661 [68 S.Ct. 1260, 92 L.Ed. 1633]; Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 87 [68 S.Ct. 1475, 92 L.Ed. 1832]; Aero Mayflower Transit Co. v. Board of R. R. Comm'rs, 332 U.S. 495, 502 [68 S.Ct. 167, 92 L.Ed. 99]; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 256 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]; McGoldrick v. Berwind-White Co., 309 U.S. 33, 47 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 172-173 [119 P.2d 945]; Barker Bros., Inc. v. City of Los Angeles, 10 Cal.2d 603, 609 [76 P.2d 97].) "Interstate business must pay its way" (Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]), provided it does not pay too much or too often. Since the tax imposed by the defendant does not make it do either, we are of the opinion that the judgments must be reversed.
 [4] In view of the recent decisions of the United States Supreme Court in Memphis Natural Gas Co. v. Stone, 335 U.S. 80 [68 S.Ct. 1475, 92 L.Ed. 1832], and Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653 [68 S.Ct. 1260, 92 L.Ed. 1633], the city may clearly tax plaintiffs' local activities and the gross receipts therefrom. In Memphis Natural Gas Co. v. Stone, supra, the court sustained a state tax on a foreign corporation engaged exclusively in interstate commerce in operating gas lines through the state. [fn. *] The tax was imposed on "the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system" *797 and was measured by a proportion of the capital employed within the state. (335 U.S. at 82-83.) "Such local incidents form a sound basis for taxation by a state of foreign corporations doing interstate business. For example, we have upheld state taxes on sales after completion of the interstate transit, McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; on production of electricity for interstate commerce, Utah Power & L. Co. v. Pfost, 286 U.S. 165 [52 S.Ct. 548, 76 L.Ed. 1038], compare Fisher's Blend Station, Inc. v. State Tax Comm'n, 297 U.S. 650, 655 [56 S.Ct. 608, 80 L.Ed. 956]; a privilege tax on the operation of machines for the production of electricity to drive gas in interstate commerce, Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604 [58 S.Ct. 736, 82 L.Ed. 1043]; a use tax on rails shipped interstate for immediate incorporation into an interstate transportation system, Southern Pacific Co. v. Gallagher, 306 U.S. 167 [59 S.Ct. 389, 83 L.Ed. 586]."
 "We have upheld a franchise tax on a foreign corporation authorized to do business and making sales in a state other than its actual or business domicile, Ford v. Beauchamp, 308 U.S. 331 [60 S.Ct. 273, 84 L.Ed. 304]; a privilege tax on a foreign corporation doing business in the state upon a proportion of property in the taxing state that was computed by using interstate commerce as an element, Hump Hairpin Co. v. Emmerson, 258 U.S. 290 [42 S.Ct. 305, 66 L.Ed. 622]; Western Cartridge Co. v. Emmerson, 281 U.S. 511 [50 S.Ct. 383, 74 L.Ed. 1004]; an excise on intrastate manufacturing, added to an ad valorem tax and measured by sales, including out of state, American Mfg. Co. v. St. Louis, 250 U.S. 459 [39 S.Ct. 522, 63 L.Ed. 1084], and see Powell, 60 Harv.L.Rev. 508 and 727, Freeman v. Hewit, 329 U.S. 249, 255 [67 S.Ct. 274, 91 L.Ed. 265]; a license for storing goods at rest in the state under a transit privilege, Independent Warehouses, Inc. v. Scheele, 331 U.S. 70 [67 S.Ct. 1062, 91 L.Ed. 1346]." (335 U.S. 80.) In upholding the tax the prevailing opinion recognized that "This transportation by pipe line with deliveries within the state at wholesale only is interstate business" (335 U.S. at 85), but held that, notwithstanding this fact, "where the corporations carry on a local activity sufficiently separate from the interstate commerce state taxes may be validly laid, even though the exaction from the business of the taxpayer is precisely the same as though the tax had been levied upon *798 the interstate business itself." (335 U.S. at 87.) It is clear that it was not intended by this language to imply that the taxpayer was not engaged in interstate commerce in carrying on such an activity [fn. *] for the opinion goes on to say "But the choice of a local incident for the tax, without more, is not enough. There are always convenient local incidents in every interstate operation. Nippert v. City of Richmond, supra [327 U.S. 416 (66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844), at 423]. The incident selected should be one that does not lend itself to repeated exactions in other states. Otherwise intrastate commerce may be preferred over interstate commerce" [citing Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]. Since the risk of repeated exactions in other states attends interstate, not intrastate commerce, it is obvious that the court regarded the activities in question, maintaining and keeping the pipe line system in repair, as interstate commerce and the tax as a legitimate one because it was apportioned. [fn. ]
 The local activities of the taxpayers in maintaining and keeping in repair ships that deliver cargo interstate are *799 no more immune from state and local taxation than local activities in maintaining and keeping in repair pipe lines that deliver gas interstate. (See Ott v. Mississippi Barge Lines, 336 U.S. 169 [69 S.Ct. 432, 93 L.Ed. 585].) These local incidents of interstate commerce are separate and distinct from the "very process of interstate commerce," such as interstate transportation of commodities. They are carried on entirely within the harbor of Los Angeles. They are not free from local taxation merely because "interstate commerce could not be conducted without [them] ... These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business." (Memphis Natural Gas Co. v. Stone, supra, 96.)
 The present case cannot be distinguished on the ground that the tax is measured by gross receipts rather than by capital employed in the state, as in the Memphis Natural Gas case, for the United States Supreme Court has recently held that a state tax may be imposed on gross receipts from interstate transportation when apportioned to mileage within the taxing state. (Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 663 [68 S.Ct. 1260, 92 L.Ed. 1633].)
 "All of these taxes in one way or another add to the expense of carrying on interstate commerce, and in that sense burden it; but they are not for that reason prohibited. On the other hand, local taxes, measured by gross receipts from interstate commerce, have often been pronounced unconstitutional. The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed [citations] or added to [citations] with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce ..."
 "... Taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carried on within the taxing state [citations], and in other cases has been rejected only because the apportionment *800 was found to be inadequate or unfair ... it is a practical way of laying upon the commerce its share of the local tax burden without subjecting it to multiple taxation not borne by local commerce and to which it would be subject if gross receipts, unapportioned, could be made the measure of a tax laid in every state where the commerce is carried on ... In the one case the tax reaches only that part of the commerce carried on within the taxing state; in the other it extends to the commerce carried on without the state boundaries, and, if valid, could be similarly laid in every other state in which the business is conducted." (Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255-257 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]; Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 439 [59 S.Ct. 325, 83 L.Ed. 272]; Adams Mfg. Co. v. Storen, 304 U.S. 307, 311, 313 [58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429]; McGoldrick v. Berwind-White Co., 309 U.S. 33, 56-58 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; Dept. of Treasury v. Wood Preserving Corp., 313 U.S. 62, 67 [61 S.Ct. 885, 85 L.Ed. 1188]; Southern Pacific Co. v. Gallagher, 306 U.S. 167, 177 [59 S.Ct. 389, 83 L.Ed. 586]; International Harvester Co. v. Dept. of Treasury, 322 U.S. 340, 349 [64 S.Ct. 1019, 1030, 88 L.Ed. 1313].) [5] When there is no danger that several states will impose cumulative tax burdens on the same subject, a tax upon an activity that is a local incident of interstate commerce may be measured by gross receipts from that activity.
 Freeman v. Hewit, 329 U.S. 249 [67 S.Ct. 274, 91 L.Ed. 265], does not represent a departure from the cumulative burdens test. That case involved the validity of the Indiana Gross Income Tax as applied to proceeds from the sale of securities by an Indiana domicilary on the New York Stock Exchange to a New York buyer, delivered in New York. The tax was held to be on the interstate sale, and, since it was not apportioned and could be imposed with equal right by every state that the commerce touched, it was invalid under the rule of Adams Mfg. Co. v. Storen, supra. The court has interpreted it as authority for the invalidation of an unapportioned tax as a "direct burden" on interstate commerce. (Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 663 [68 S.Ct. 1260, 92 L.Ed. 1633].)
 The vice of the tax in Freeman v. Hewitt was not the taxation of interstate commerce, but the danger that such commerce might be doubly taxed. The state of the purchaser could properly impose a tax upon the sale (McGoldrick v. Berwind-White *801 Co., 309 U.S. 33, 47 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; Freeman v. Hewit, 329 U.S. 249, 257 [67 S.Ct. 274, 91 L.Ed. 265]), and an Indiana tax upon the same sale would create the risk of a multiple tax burden that the sale would not have borne had it been made solely intrastate. The case therefore represents, not a repudiation of the cumulative burdens test as plaintiffs imply, but a recognition of that test.
 [6] The activities in the present case "are events apart from the flow of commerce." (Memphis Natural Gas Co. v. Stone, supra, 96.) They are carried on entirely within the harbor of Los Angeles, and a tax thereon is therefore self-apportioning. The fact that the ships might require similar service in the harbors of Seattle, Honolulu or New Orleans does not make taxation by each jurisdiction a multiple tax burden. "Like a property tax on the pipes or equipment in different states, [each tax] would be a different tax, on a different and wholly separate subject-matter, with no cumulative effect caused by the interstate character of the business." (Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604, 613 [58 S.Ct. 736, 82 L.Ed. 1043].) Interstate commerce is not unduly burdened because plaintiffs are required to bear a fair share of the cost of the local government whose protection they enjoy.
 The cases of Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90 [58 S.Ct. 72, 82 L.Ed. 68], and Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422 [67 S.Ct. 815, 91 L.Ed. 993], upon which plaintiffs rely, do not compel a contrary result. The court in those cases invalidated gross receipts taxes on the business of loading and unloading cargo shipped in interstate commerce, for the reason that these activities were inseparable from the interstate transportation of the cargo. Since that transportation was held not to be complete until the cargo was unloaded at the final port of call, a tax on "a continuation of the transportation" was held to be a tax prohibited by the commerce clause for the reason that it was imposed on "the very process of interstate commerce" as distinguished from a tax upon a local activity related to interstate commerce. (Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 89 [68 S.Ct. 1475, 92 L.Ed. 1832]; Freeman v. Hewit, 329 U.S. 249, 253 [67 S.Ct. 274, 91 L.Ed. 265].)
 That part of plaintiffs' service that consists of loading ships' stores aboard the vessels serviced cannot be likened to the stevedoring business held immune from state taxation in the *802 Puget Sound and Carter & Weekes cases. There is a clear distinction between the loading and transportation of commodities for shipment in interstate commerce and the loading of food and supplies to be consumed in the course of the journey. The loading of ships' stores, of food, fuel, and supplies, is comparable to the business of a ships' chandler (Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 94 [58 S.Ct. 72, 82 L.Ed. 68]), or the sale and delivery of gasoline to be consumed in flight by an interstate air carrier. (Eastern Air Transport v. South Carolina Tax Comm., 285 U.S. 147, 153 [52 S.Ct. 340, 76 L.Ed. 673].) Whatever immunity might attach to the interstate carriage of cargo does not extend to the delivery of food and fuel for consumption on the carrier. (Eastern Air Transport v. South Carolina Tax Comm., supra.)
 The decisions of the court since the Carter & Weekes case indicate no intention to extend its application. Indeed, insofar as the Carter & Weekes decision invalidates a tax on interstate transportation even though it is fairly apportioned to activity within the taxing state, its authority is questionable in view of the subsequent decision in Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 663 [68 S.Ct. 1260, 92 L.Ed. 1633]. That case involved the validity of a New York tax on the gross receipts of the taxpayer from its transportation service, 43 per cent of which was conducted outside New York. Since the tax was admittedly imposed on gross receipts from interstate transportation, the reasoning of the Carter & Weekes case would indicate that it was wholly invalid. The court, however, held the tax invalid only to the extent that it was imposed on the entire gross receipts of the taxpayer, including those attributable to that portion of the total mileage that was outside New York. It was expressly held that even though the tax was imposed on gross receipts from interstate transportation, it would be upheld if apportioned to mileage within the taxing state. It is reasonable to assume that this decision indicates an intention to apply the cumulative burdens test to taxation even of "the very processes of interstate commerce" and that a different result would be reached if the Carter & Weekes case were reconsidered in the light of that decision.
 It is clear, however, that whatever vitality the immunity of interstate transportation from state taxation may still retain, it is not the intention of the court to extend it to local activities and services in aid of that transportation, in view of the decision in the Memphis Natural Gas case, supra. *803
 [7] Even under the broadest interpretation, plaintiffs' business is not interstate transportation. Their service does not begin until that transportation has ended and the transported cargo has been removed from the ships. Their aid to the instrumentalities of that transportation is no more a part of the interstate flow of commerce than the cab service held taxable in Pennsylvania R. R. Co. v. Knight, 192 U.S. 21, 26-27 [24 S.Ct. 202, 48 L.Ed. 325], cited with approval in the Puget Sound case (302 U.S. 90, 93), or the local activities in maintaining and keeping in repair pipe lines that deliver gas interstate held taxable in Memphis Natural Gas Co. v. Stone, supra, 335 U.S. 80.
 [8] If plaintiffs' activities or the gross receipts therefrom were the subject of the tax rather than its measure, there could be no doubt as to the validity of the tax, in view of Memphis Natural Gas Co. v. Stone, supra, 335 U.S. 80, and Central Greyhound Lines, Inc. v. Mealey, supra, 334 U.S. 653. Since the subject of the tax is the privilege of engaging in business activities and since plaintiffs' activities were interstate commerce, even though local incidents thereof, the question is raised whether the tax is void on the ground that the privilege of engaging in interstate commerce is not a proper subject of state and local taxation. The validity of the tax would thus turn, not on its practical operation, but on the descriptive label given it. (See Powell, Business Taxes and The Federal Constitution, Proceedings of the Eighteenth Annual Conference of the National Tax Association (1925) 164, 170-172.) A recent decision of the United States Supreme Court, however, indicates that the court is "concerned with the practical operation of challenged state tax statutes, not with their descriptive labels." (Interstate Oil Pipe Line Co. v. Stone, 337 U.S. 662 [69 S.Ct. 1264, 1266, 93 L.Ed. 1613].) That case involved the imposition by the state of Mississippi of a business privilege tax of 2 per cent of the annual gross receipts of "every person engaging or continuing within this state in the business of operating a pipe line for transporting for compensation or hire from one point to another in this state oil or natural gas or artificial gas through pipes or conduits in this state." (Miss. Code, 10109.) Interstate Oil Pipe Line Company, a foreign corporation qualified to do business in Mississippi, owned and operated pipe lines for the transmission of oil from Mississippi oil fields to loading racks within the state for immediate rail transportation interstate. *804 The imposition of the tax was sustained by the Mississippi Supreme Court as a tax "for the privilege of operating the pumping machinery and other pipe line equipment in the transportation of oil in the manner hereinbefore set forth." (Interstate Oil Pipe Line Co. v. Stone, 203 Miss. 715 [35 So.2d 73, 75, 36 So.2d 142].) The corporation appealed, contending that the tax was invalid as an imposition on the privilege of carrying on an interstate business and that the Memphis Natural Gas case could therefore be distinguished on that ground. Four justices, speaking through Mr. Justice Rutledge, were willing to assume that the tax was upon the privilege of carrying on an interstate business, holding that "The statute is not invalidated by the commerce clause of the Federal Constitution merely because, unlike the statute attacked in Memphis Gas Co. v. Stone, supra, it imposes a 'direct' tax on the 'privilege' of engaging in interstate commerce ... Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate commerce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax." (69 S.Ct. at 1266-1267.) Mr. Justice Burton concurred in the judgment sustaining the tax, but on the ground that the activities were intrastate commerce. Four dissenting justices were of the opinion that the tax was on the privilege of engaging in interstate transportation of oil and gas and was invalid solely for that reason.
 The disposition of the present case does not require a resolution of these conflicting views. Even if the proposition stated by the dissenting justices in the Interstate Oil case still has any vitality, it is not controlling here. The United States Supreme Court has long distinguished between a tax imposed on "the very processes of interstate commerce" (Freeman v. Hewit, 329 U.S. 249, 253 [67 S.Ct. 274, 91 L.Ed. 265]), such as transportation (Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90 [58 S.Ct. 72, 82 L.Ed. 68]; Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422 [67 S.Ct. 815, 91 L.Ed. 993]), and a tax imposed on local "incidents of the commerce." The force of this distinction is not diminished by the fact that the challenged tax is imposed on the privilege of conducting the local activities. In sustaining *805 the tax in the Memphis Natural Gas case, supra, the court expressly recognized that "The facts of this case present again the perennial problem of the validity of a state tax for the privilege of carrying on, within a state, certain activities admittedly necessary to maintain or operate the interstate business of the taxpayer." (335 U.S. 80, 85.) There would probably have been no disagreement in the Interstate Oil case had the challenged tax been imposed on the privilege of engaging in the local activities in aid of the interstate transportation of oil rather than on the privilege of engaging in the "very process" of that transportation. The dissenting justices made it clear at the outset that the tax was not "for the privilege of operating pumping machinery or other equipment as incidents apart from the flow of the interstate commerce. Cf., Coverdale v. Pipe Line Co., 303 U.S. 604 [58 S.Ct. 736, 82 L.Ed. 1043]." ([337 U.S. 662] 69 S.Ct. 1264, 1268 [93 L.Ed. 1613].) When a tax is imposed on the privilege of conducting a local activity separable from the very processes of interstate commerce, "it is idle to suggest that the tax is on 'the privilege of engaging in interstate business.' " (Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 85 [68 S.Ct. 1475, 92 L.Ed. 1832]; Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 661 [68 S.Ct. 1260, 92 L.Ed. 1633].) A state may properly impose a tax on the privilege of carrying on a local activity, and the fact that the activity is essential to interstate commerce does not "prevent a State from giving [it] detached relevance for purposes of local taxation." (Freeman v. Hewit, 329 U.S. 249, 255 [67 S.Ct. 274, 91 L.Ed. 265]; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 257 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]; McGoldrick v. Berwind-White Co., 309 U.S. 33, 47 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; Barker Bros., Inc. v. City of Los Angeles, 10 Cal.2d 603, 609 [76 P.2d 97].) It is undisputed that plaintiffs' activities are conducted wholly within the jurisdiction of the taxing authority and that plaintiffs are required to pay only their share of the cost of the local government whose protection they enjoy. For the privilege of carrying on those activities, the city of Los Angeles can constitutionally impose the challenged tax.
 The judgments are reversed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.
NOTES
[fn. *] *. " 21.10. No person shall engage in any business, profession, trade or occupation, or perform any act, required to be licensed under the provisions of this Article until such license is first obtained."
[fn. *] *. Miss. Code 9314: "For the year 1940 and annually thereafter, there shall be and is hereby imposed, levied and assessed upon every corporation, association or joint stock company, as hereinbefore defined, organized and existing under and by virtue of the laws of some other state, territory or country, or organized and existing without any specific statutory authority, now, or hereafter doing business within this state, as hereinbefore defined, a franchise or excise tax equal to $1.50 of each $1,000.00 or fraction thereof of the value of the capital used, invested or employed within this state, except as hereinafter provided. It being the purpose of this section to require the payment of a tax by all organizations not organized under the laws of this state, measured by the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state."
[fn. *] *. "To call commerce in fact interstate 'local commerce' because under a given set of circumstances, as in the Lehigh Valley case [145 U.S. 192 (12 S.Ct. 806, 36 L.Ed. 672)], a particular exertion of State power is not rendered invalid by the Commerce Clause is to indulge in a fiction. Especially in the disposition of constitutional issues are legal fictions hazardous, because of the risk of confounding users and not merely readers. The kind of confusion to which the Lehigh Valley opinion has given rise results from employing a needless fiction--calling commerce local which in fact is interstate--as a manner of stating that a particular exercise of State power is not invalid even though it affects interstate commerce. The difficult task of determining whether a phase of commerce, concededly interstate, is subject to a particular incidence of State regulation, through taxation or otherwise, is not lessened by calling interstate commerce local commerce in order to sustain its local control. To state this persistent and protean problem of our federalism in the form of a question-begging fiction, is not to answer it." (Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 659-660 [68 S.Ct. 1260, 92 L.Ed. 1633].)
[fn. ] . The quotation later in the opinion from Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 565 [45 S.Ct. 184, 69 L.Ed. 439], also makes it clear that "the aforementioned activities of maintenance, repair and manning by a corporation engaged exclusively in interstate commerce" (335 U.S. at 93) are activities in interstate commerce. "In Ozark Pipe Line v. Monier, supra, this court at p. 565 spoke of such activities as set out below." The note below (335 U.S. at 94) reads: "This court said, 266 U.S. at 565: 'The business actually carried on by appellant was exclusively in interstate commerce. The maintenance of an office, the purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the State, were all exclusively in furtherance of its interstate business; and the property itself, however extensive or of whatever character, was likewise devoted only to that end. They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business.' "