[Civ. No. 20713. Second Dist., Div. Three. Sept. 6, 1955.]

NATIONAL SCHOOLS (a Corporation), Appellant, v. CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 20712. Second Dist., Div. Three. Sept. 6, 1955.]

RADIO-TELEVISION TRAINING SCHOOL, INC. (a Corporation), Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Thompson & Royston for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, and James A. Doherty, Assistant City Attorneys, for Respondents.

ASHBURN, J. pro tem.*—These actions for declaratory relief were tried together and involve the same legal problems, which are presented in a single set of briefs on appeal. Each plaintiff conducts a correspondence trade school with headquarters in Los Angeles, and the greater portion of its business is interstate commerce. The respective complaints attack the application to plaintiff's business of the Los Angeles License Ordinance No. 77000, especially section 21.149 thereof, which at the time of commencement of the action imposed a licensing fee upon trade schools of $4.50 per quarter

*Assigned by Chairman of Judicial Council.

for the first $4,500, or less, of gross annual receipts, plus $1.00 per quarter for each additional $1,000 of such gross annual receipts, or fractional part thereof. The text is as follows: "For every person conducting a trade school, trade college, business school, business college, beauty school or beauty college, where instruction is given in any trade or occupation and a fee is charged for such instruction or compensation is received by such school or college by the sale of any goods, wares, merchandise or services, the sum of $4.50 per quarter for the first $4,500 or less of gross annual receipts, plus $1.00 per quarter for each additional $1,000 of such gross annual receipts or fractional part thereof. The provisions of this section shall not apply to a dramatic school."

Payment of the tax is a condition precedent to the doing of business within the city. Section 21.10 says: "No person shall engage in any business, profession, trade or occupation, or perform any act, required to be licensed under the provisions of this Article until such license is first obtained. . . ."

During the pendency of the actions and before trial, the section was amended, effective on January 1, 1952, to reduce the fee to $12 per year, or fraction thereof, for the first $12,000, or less, of gross receipts and in addition thereto, the sum of $1.00 per year for each additional $1,000 of gross receipts in excess of $12,000. Otherwise the text of the section was not changed. Primarily plaintiffs sought adjudication that the application of the ordinance to their businesses would constitute an unlawful burden upon interstate commerce,—this because of the peculiar nature of the business of each. The cause was submitted upon a written stipulation of facts, no oral evidence was taken, and no findings made. The trial judge ruled in favor of defendant city, and hence these appeals.

Each plaintiff is a California corporation, with its executive office and its place or places of business located within the city of Los Angeles; National Schools is hereinafter designated as National and Radio-Television Training School, Inc. is called Radio. Radio is engaged exclusively in the business of conducting a correspondence school, teaching by means of home study a course in radio, television and allied electronics. National's operations are divided into three departments, a residence school, a home study division, and a students' store. In its residence school National conducts within the city an ordinary technical and trade school. Its

student store is a retail store which is open to resident students and to the public. The company has in the past reported its income from the residence school and paid tax thereon pursuant to section 21.149 of the ordinance; it has also reported its receipts from the store and paid thereon as required by section 21.167 (to which further reference will be made). National's home study division corresponds closely to Radio's activity. It is a correspondence school, instructing in radio, television and allied electronics and diesel, automotive and allied mechanics. Neither plaintiff has reported its gross income from or paid any tax to the city upon the conduct of the correspondence courses. For the present the discussion of National activities will be confined to the home study division, its correspondence school.

Radio's entire gross receipts consist of tuition payments. It has some 4,200 students, 82 per cent of whom reside outside of California. National has some 17,500 correspondence students, 90 per cent of whom reside outside the state. About 45 per cent of its gross receipts comes from tuition fees. It thus appears that each plaintiff conducts a correspondence school business within California—18 and 10 per cent of students, respectively—and an interstate school from which Radio gets 82 per cent of its business and National 90 per cent.

The business of each company is nationwide, supported and promoted by generous advertising through magazines or the mails or both. When a prospect becomes a student he signs a contract which is forwarded to the home office in Los Angeles and there accepted. Radio has 15 field representatives who promote and service the business for it. National has no field representatives. Neither company has any office or place of business outside Los Angeles. The general procedure of each is substantially as follows. At the Los Angeles headquarters are prepared written lessons and materials for conducting experiments or constructing things like radio and television sets; these lessons and equipment are mailed to the students in installments from time to time; the student at his home base studies the lessons and performs the experiments and other work; he must fill out and return an examination paper on each lesson; also a report on each experiment or other job done; he is graded at the home office on each and comments are forwarded to him; these things go on, through the mails, for a period of 18 months for completion of the course; 139 completed lessons and examinations occur during the National curriculum and 112 in Radio's course of in-

struction. And final examinations must be passed. The instructors and graders remain in Los Angeles and the students in their respective homes.

It is agreed by counsel that this is interstate commerce so far as it embraces nonresident students. And it was so ruled, upon substantially the same facts, in *International Text-Book Co.* v. *Pigg,* 217 U.S. 91 [30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.N.S. 493]. The stipulation of facts shows in each instance that the city proposes and intends to assess the said license tax to each plaintiff and ''to include in the measure of said tax the plaintiff's gross receipts as hereinabove alleged from its correspondence students both within and without the State of California'' and at the appropriate rates before and after amendment of section 21.149. The trial court ruled that ''Gross receipts attributable to fees collected from home study students, whether located within or beyond the limits of the State of California, are properly and validly included in the measure of the tax imposed by the said Section 21.149.''

We here enter upon the recurrent and delicate task of accommodating the ever-increasing demands for more taxes on the part of the federal and state governments and their subordinate taxing agencies, one whose history ''is spread over hundreds of volumes of our Reports'' (*Freeman* v. *Hewit,* 329 U.S. 249, 252 [67 S.Ct. 274, 91 L.Ed. 265]). And the problem must be attacked with a realization of this truth: ''To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts.'' (*Freeman* v. *Hewit, supra,* at p. 252.)

It plainly appears here that the correspondence business of each plaintiff is readily severable into interstate and intrastate schools, 90 per cent and 82 per cent interstate, and balance intrastate. ▮ The word school has varying connotations. (78 C.J.S. p. 605, § 1; *Board of Supervisors* v. *Cothran,* 84 Cal.App.2d 679, 682 [191 P.2d 506]; *Weisse* v. *Board of Education,* 178 Misc. 118 [32 N.Y.S.2d 258, 261]; *Walkenhorst* v. *Kesler,* 92 Utah 312 [67 P.2d 654, 658]; *Bastendorf* v. *Arndt,* 290 Mich. 423 [287 N.W. 579, 580, 124 A.L.R. 445].) It may mean, among other things, the building in which instruction is given, or the assemblage within a building set aside for purpose of instruction, or the combination

of teachers and pupils for the purpose of giving and receiving instruction; it may be on the mountaintop, or in a school yard, or may be held together by communication through the mails, or the radio or television. Correspondence schools fall in the last mentioned category. It is said in *International Text-Book Co.* v. *Mueller,* 149 Ill.App. 509, 512, that ". . . a school cannot exist without pupils, and necessarily where the pupils and instructors are located in different states, the school cannot properly be said to have an exclusive *situs* in one state." The tax in question is "in addition to and not in lieu of ad valorem taxes[1] or any other taxes imposed by the City of Los Angeles upon the plaintiff." And its incidence is upon "conducting a trade school," not some minor phase of same supposed to have detached tax relevance, such as preparing lessons and grading examination papers, or assembling materials for experiments preparatory to transmission to students. The tax is imposed upon the conduct of a school which itself constitutes interstate commerce and which is readily separable into interstate and intrastate branches.

■ The basic applicable rule of law is stated in *Gwin, White & Prince* v. *Henneford,* 305 U.S. 434, 438 [59 S.Ct. 325, 83 L.Ed. 272, 276] : "It has often been recognized that 'even interstate business must pay its way' by bearing its share of local tax burdens, *Postal Teleg.-Cable Co.* v. *Richmond,* 249 U.S. 252, 259 [39 S.Ct. 265, 63 L.Ed. 590, 594], and that in consequence not every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden. (Citing cases.) But it is enough for present purposes that under the commerce clause, in the absence of congressional action, state taxation, whatever its form, is precluded if it discriminates against interstate commerce or undertakes to lay a privilege tax measured by gross receipts derived from activities in such commerce which extend beyond the territorial limits of the taxing state. Such a tax, at least when not apportioned to the activities carried on within the state, (citing cases) burdens the commerce in the same manner and to the same extent as if the exaction were for the privilege of engaging in interstate commerce and would, if sustained, expose it to multiple tax burdens, each measured by the entire amount of the commerce, to which local commerce is not subject."

---

[1] As to gross receipts tax in lieu and as measure of ad valorem tax on property, see *Cudahy Packing Co.* v. *Minnesota,* 246 U.S. 450, 452-455 [38 S.Ct. 373, 62 L.Ed. 827, 829-830]; *Illinois Central R. Co.* v. *Minnesota,* 309 U.S. 157 [60 S.Ct. 419, 84 L.Ed. 670].

And at page 441: ". . . For half a century, following the decision in *Philadelphia & S. Mail S. S. Co.* v. *Pennsylvania,* 122 U.S. 326 [7 S.Ct. 1118, 30 L.Ed. 1200], 1 Inters. Com. Rep. 308, it has not been doubted that state taxation of local participation in interstate commerce, measured by the entire volume of the commerce, is likewise foreclosed."

█ *Sprout* v. *South Bend,* 277 U.S. 163, 170-171 [48 S.Ct. 502, 72 L.Ed. 833, 837, 62 A.L.R. 45] : "A state may, by appropriate legislation, require payment of an occupation tax from one engaged in both intrastate and interstate commerce. . . . But in order that the fee or tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business."

The necessity of apportionment of the business for local taxing purposes, where it lends itself to that process, has been reiterated and made the basis of ruling by the United States Supreme Court many times. See *Central Greyhound Lines* v. *Mealey,* 334 U.S. 653, 663 [68 S.Ct. 1260, 92 L.Ed. 1633, 1641] ; *J. D. Adams Mfg. Co.* v. *Storen,* 304 U.S. 307, 314 [58 S.Ct. 913, 82 L.Ed. 1365, 1371, 117 A.L.R. 429] ; *Joseph* v. *Carter & Weekes S. Co.,* 330 U.S. 422, 427 [67 S.Ct. 815, 91 L.Ed. 993, 1000] ; *Norton Co.* v. *Department of Rev.,* 340 U.S. 534, 539 [71 S.Ct. 377, 95 L.Ed. 517, 521] ; *East Ohio Gas Co.* v. *Tax Com.,* 283 U.S. 465, 470 [51 S.Ct. 499, 75 L.Ed. 1171, 1174] ; *McGoldrick* v. *Berwind-White Coal Min. Co.,* 309 U.S. 33, 46 [60 S.Ct. 388, 84 L.Ed. 565, 570, 128 A.L.R. 876], footnote 2; *Cooney* v. *Mountain States Tel. & Tel. Co.,* 294 U.S. 384, 393-394 [55 S.Ct. 477, 79 L.Ed. 934, 942] ; *International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 [67 S.Ct. 444, 91 L.Ed. 390, 395] ; *Spector Motor Service, Inc.* v. *O'Connor,* 340 U.S. 602, 609-610 [71 S.Ct. 508, 95 L.Ed. 573, 579]. █ "By its very nature an unapportioned gross receipts tax makes interstate transportation bear more than 'a fair share of the cost of the local government whose protection it enjoys.' " (*Central Greyhound Lines* v. *Mealey, supra,* 334 U.S. 653, 663 [68 S.Ct. 1260, 92 L.Ed. 1633, 1641].)

Although the opinion in *City of Los Angeles* v. *Belridge Oil Co.,* 42 Cal.2d 823 [271 P.2d 5], does not discuss the im-

mediate problem posed by the instant case, its reasoning makes it clear that the city's license tax cannot extend to severable interstate activities such as those at bar. Section 21.166 of the Los Angeles Tax Ordinance was there considered. It imposed a tax upon every person "manufacturing and selling any goods, wares or merchandise at wholesale, or selling goods, wares or merchandise at wholesale." The defendant was engaged in such business in the city, sale of crude oil and gas, but the production was in Kern County and the products were delivered in the field and never entered the territorial limits of Los Angeles. The negotiations, contracts, billing, collections, etc., occurred in the city. The company contended *inter alia* that the city could not constitutionally tax its total gross receipts as that would be an attempt to impose a tax on business carried on outside the city. The court ruled: "In the instant case we can find no objection, constitutional or otherwise, to the imposition of a business license tax on the privilege of engaging in selling activities within the city. Likewise there is no objection to basing the rate of such tax on the gross receipts attributable to such selling activities, even though various extraterritorial events contribute to such gross receipts. ■ There is, however, one important limitation which should be pointed out and that is this: even though the city can tax the activity of selling it can only base the tax on such selling activities as are carried out within its territorial limits. For this reason it is only those gross receipts which are attributable to selling activities within the city which should form the basis for the rate of tax. Gross receipts attributable to selling activities conducted outside the city should not be included. Such a construction necessarily follows from the fact that the business license tax is on the privilege of engaging in selling activities in the city of Los Angeles and as such should only be based upon such activities. . . . In the instant case a just and reasonable construction requires that the measure of the tax be limited to those gross receipts attributable to selling activities within the city of Los Angeles." (Pp. 831-832-833.) This language finds a counterpart in *McLeod* v. *J. E. Dilworth Co.*, 322 U.S. 327, 330, 349 [64 S.Ct. 1023, 1030, 88 L.Ed. 1304, 1306, 1319], wherein the court held invalid a sales tax upon a transaction completed in another state, and said: "For Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction." The court in the Belridge case had previously quoted *Martin*

*Ship Service Co.* v. *City of Los Angeles,* 34 Cal.2d 793, 796 [215 P.2d 24], as follows: " 'In view of the recent decisions of the United States Supreme Court in *Memphis Natural Gas Co.* v. *Stone,* 335 U.S. 80 [68 S.Ct. 1475, 92 L.Ed. 1832], and *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U.S. 653 [68 S.Ct. 1260, 92 L.Ed. 1633], the city may clearly tax plaintiffs' local activities and the gross receipts therefrom.' " The reference to the Central Greyhound case is significant for the gross receipts tax was there sustainable only through apportionment of interstate and internal commerce, and the cause was remanded to the state court for such purpose. (334 U.S. at 663-664, 92 L.Ed. at 1642.) In the cases now on appeal an apportionment has been made by the stipulation of facts.

*Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 609-610 [76 P.2d 97], is not opposed to the foregoing views. It says at page 609: "But in any computation of the amount of its gross sales the appellant may not make any deduction for goods shipped out of the state of California. The ordinance lays a tax upon the occupation or business, not upon particular sales. The volume of gross business fixes the amount of tax to be paid. Such a tax places no direct burden on commerce in the goods sold. All taxation has some incidental and indirect effect upon interstate commerce, but an excise tax which has only such remote effect is valid." And the court explains the ruling by quoting *Hump Hairpin Mfg. Co.* v. *Emmerson,* 258 U.S. 290, 295 [42 S.Ct. 305, 66 L.Ed. 622], as follows: " 'The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it.' "

In view of the clear line of demarcation prescribed by the foregoing authorities, it is unnecessary to undertake a review or reconcilement of the numerous cases dealing with the validity of a local tax assessed against some local incident of interstate commerce deemed to be severable and to have detached relevance for purposes of taxation. In this category fall the cited cases of *Martin Ship Service Co.* v. *City of Los Angeles,* 34 Cal.2d 793 [215 P.2d 24]; *Michigan-*

*Wisconsin P. L. Co.* v. *Calvert,* 347 U.S. 157 [74 S.Ct. 396, 98 L.Ed. 583]; *Fisher's Blend Station* v. *State Tax Com.,* 297 U.S. 650 [56 S.Ct. 608, 80 L.Ed. 956]; *Utah Power & Light Co.* v. *Pfost,* 286 U.S. 165 [52 S.Ct. 548, 76 L.Ed. 1038]; *Interstate Oil Pipe Line Co.* v. *Stone,* 337 U.S. 662 [69 S.Ct. 1264, 93 L.Ed. 1613]; *Nippert* v. *Richmond,* 327 U.S. 416 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844]; *Puget Sound Stevedoring Co.* v. *Tax Com.,* 302 U.S. 90 [58 S.Ct. 72, 82 L.Ed. 68]; *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]; *Memphis Natural Gas Co.* v. *Stone,* 335 U.S. 80 [68 S.Ct. 1475, 92 L.Ed. 1832]; *Cloverdale* v. *Arkansas-Louisiana P. L. Co.,* 303 U.S. 604 [58 S.Ct. 736, 82 L.Ed. 1043]; *Chicago* v. *Willett Co.,* 344 U.S. 574 [73 S.Ct. 460, 97 L.Ed. 559]; *McGoldrick* v. *Berwind-White Coal Min. Co., supra,* 309 U.S. 33 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876].

Throughout the cases dealing with local taxation of a severable incident of interstate commerce runs a discussion of whether the tax is of such a nature that it may be repeated in other jurisdictions, thus threatening multiple burdens upon that commerce and its complete extinction if carried to the theoretical extreme. ▆ The effect of those cases is thus summarized by Mr. Justice Traynor, "When there is no danger that several states will impose cumulative tax burdens on the same subject, a tax upon an activity that is a *local incident* of interstate commerce may be measured by gross receipts from *that activity.*" (Emphasis added; *Martin Ship Service Co.* v. *City of Los Angeles,* 34 Cal.2d 793 at 800 [215 P.2d 24].) And we apprehend that the multiple burden problem is confined to the "local incidents" cases. This appears from the above quotation from *Gwin, White & Prince* v. *Henneford, supra,* 305 U.S. 434, 439 [59 S.Ct. 325, 83 L.Ed. 272, 276]. Immediately following that language is this: "Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, is not apportioned to its activities within the state. If Washington is free to exact such a tax, other states to which the commerce extends may, with equal right, lay a tax similarly measured for the privilege of conducting within their respective territorial limits the activities there which contribute to the service. The present tax, though nominally local, thus in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to

which local commerce is not exposed. . . . Such a multiplication of state taxes, each measured by the volume of the commerce, would re-establish the barriers to interstate trade which it was the object of the commerce. clause to remove. Unlawfulness of the burden depends upon its nature, measured in terms of its capacity to obstruct interstate commerce, and not on the contingency that some other state may first have subjected the commerce to a like burden." See also *McGoldrick* v. *Berwind-White Coal Min. Co., supra,* 309 U.S. at 57, 84 L.Ed. at 577. ▉ A tax laid upon a severable portion of an interstate business without any apportionment is a direct and unlawful burden upon interstate commerce. If the ordinance required this it would be void, at least *pro tanto.* But the record shows appellants' real complaint to be the manner in which the city officials intend to apply it to their businesses.

▉ The description of the taxpayer in the ordinance is "every person conducting a trade school . . . where instruction is given in any trade or occupation." It must be construed to square with the commerce clause of the Federal Constitution (art. I, § 8) if that can be done reasonably. ▉ "As stated in *Franklin* v. *Peterson,* 87 Cal.App.2d 727, 730 [197 P.2d 788], 'It is the rule that where a statute or ordinance is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, in whole or in part, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. The rule is based on the presumption that the legislative body intended not to violate the Constitution, but to make a valid statute or ordinance within the scope of its constitutional powers.' " (*City of Los Angeles* v. *Belridge Oil Co., supra,* 42 Cal.2d 823 at 832.) ▉ Volume 33, American Jurisprudence, page 351, section 29: ". . . a state statute imposing a general tax on certain kinds of businesses or occupations, and requiring a license to be taken out before such business or occupation shall be engaged in, must be construed as not applying to such business as may constitute interstate or foreign commerce, but only to such business of the kinds specified as constitutes local or state commerce, and to persons engaged or intending to engage therein." ▉ The proper construction of section 21.149 is that it applies to appellants' intrastate

correspondence school activities (10 per cent and 18 per cent of the respective businesses) but not to the interstate activities. That it is appropriate to thus confine the general language of the ordinance also appears from certain decisions of the United States Supreme Court in which it has held the tax void as to interstate activities but valid as to intrastate and has remanded the cause to the state court for the purpose of appropriate allocation. We refer to *Central Greyhound Lines* v. *Mealey, supra,* 334 U.S. at 663-664, 92 L.Ed. at 1642; *Puget Sound Stevedoring Co.* v. *Tax Com., supra,* 302 U.S. at 95, 82 L.Ed. at 72; *Norton Co.* v. *Department of Rev., supra,* 340 U.S. at 539, 95 L.Ed. at 521.

Appellants argue, however, that the ordinance does not apply to them because the phrase, "trade school, trade college, business school, business college, beauty school, beauty college, where instruction is given in any trade or occupation," contemplates resident instruction. The argument hinges upon the use of the word "where" and counsel seem to assume that it implies only place. This is not true generally. Webster's New International Dictionary gives this definition, among others, "In the or a case or situation in which; in circumstances in which; in the contingency that. . . ." Volume 68, Corpus Juris, page 252, section 2: "As an adverb of time, 'where' has been defined as meaning when; or when in any such case. . . ." The full phrase of the section is "where instruction is given in any trade or occupation and a fee is charged for such instruction or compensation is received by such school or college by the sale of any goods, wares, merchandise or services. . . ." It seems plain that the word "where" implies contingency and not mere place and that the contingency is instruction for compensation. We find no merit in this contention of appellants.

Their second major point is that the ordinance, as applied to the period prior to its amendment (effective January 1, 1952), discriminates against trade schools in violation of the equal protection guaranteed by the Fourteenth Amendment of the federal Constitution and article I, sections 11 and 21[2] of the Constitution of California; also section 3 of

---

[2]"Sec. 11. All laws of a general nature shall have a uniform operation."

"Sec. 21. No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

article I of the Los Angeles City Charter.[3] This, because the 4/10 of 1 per cent rate is applied to trade schools, under section 21.149, and a 1/10 of 1 per cent rate under section 21.190 to schools and colleges other than trade schools, trade colleges, business schools, business colleges, beauty schools or beauty colleges, educational institutions of collegiate grade not conducted for profit, schools operated as a function of religious or charitable institutions, and those schools licensed under sections 21.82 and 21.191 of said Los Angeles License Ordinance, also to examination coaching schools and language schools. Counsel argue that this is a revenue measure and is valid only if the classification is reasonable with respect to the purpose of the statute. Both sides agree that it is incumbent upon appellant to affirmatively establish that the challenged classification is arbitrary. And the guiding principles are laid down in *Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136 [222 P.2d 879], in which the city's license tax on places of amusement was under fire. At page 139 the court said: "Plainly there is discrimination in the taxes imposed by ordinance No. 754 for it does not apply to all businesses operated in the city. That premise also embraces the fact that plaintiffs bear a greater burden of the taxes than other businesses." At page 141: "Plaintiffs assert that the classification is improper because it does not include all amusement businesses in the city and that they bear a major share of the taxes assessed against amusements. It will be remembered that exemptions are made of pool halls and arcades where admissions are not charged, certain religious, charitable, and educational affairs, where music alone is furnished without admission charge." And at page 142: "'If a classification of persons or occupations made for the purpose of imposing taxes is founded on natural, intrinsic or fundamental distinctions which are reasonable in their relation to the object of the legislation and otherwise, they will be deemed to be valid and binding. (5 Cal.Jur., p. 824, § 188) . . . While the classification should be reasonable natural and just, in the absence of a showing to the contrary, it will be assumed there are good grounds for the classification, and the act will be upheld. (6 R.C.L., p. 378, §§ 369-376.) In the case of *People* v. *Monterey Fish Products Co.,* 195 Cal. 548, 556 [234 P. 398, 401, 38 A.L.R. 1186], it is

---

[3] "No discrimination in the amount of license tax shall be made between persons engaged in the same business other than by proportioning the tax to the amount of business done."

said in that regard: "When a legislative enactment is attacked upon this ground—of an unauthorized classification —all presumptions and intendments are in favor of the reasonable and fairness of the legislative action (5 Cal.Jur., § 628 et seq., and cases cited), and the decision . . . to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary." ' "

 "It is well settled that occupations and businesses may be classified and subdivided for purposes of taxation, and it is within the discretion of the Legislature to exact different license taxes from different classes or subclasses of businesses, subject only to the limitations of the state and federal Constitutions in regard to equal protection of the laws. No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary." It is said in *City of San Mateo* v. *Mullin*, 59 Cal.App.2d 652, 655 [139 P.2d 351] : "A difference in the method of conducting a business is generally a sound basis for classification, particularly if it appears that the tax was fixed in proportion to the amount of business, which may be determined by different but reasonable methods." Moreover, "When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification." *People* v. *Western Fruit Growers*, 22 Cal.2d 494, 507 [140 P.2d 13].) This the appellants have failed to do with respect to the classification under discussion. That the mere difference in rates charged different classes of schools does not constitute undue discrimination is conclusively settled by *Fox etc. Corp.* v. *City of Bakersfield, supra*, 36 Cal.2d 136.

 Lastly it is argued on behalf of National that section 21.149 is not applicable to gross receipts from its students' store. The argument is that other retail stores are charged less, under section 21.167 ; that prior to the 1952 amendment the tax on trade schools was eight times that exacted from retail stores, and since that amendment twice as much. It appears, however, that this students' store is but a department of National's correspondence school business. It is located on the second floor of plaintiff's principal place of

business, and, while open to the public, "no advertisement of its existence is present to apprise persons unfamiliar with the plaintiff's facilities of the existence of the store." The opening brief supplies the information that "it sells school supplies needed by its resident students" and "is patronized principally by students of National Schools." It is an integral part of the intrastate school which has been held subject to the tax of section 21.149 and no good reason appears for segregating it to tax it at a lesser rate. The situation is not comparable to that presented by *Barker Bros., Inc.* v. *Los Angeles, supra,* 10 Cal.2d 603, and is ruled by *City of Los Angeles* v. *Belridge Oil Co., supra,* 42 Cal.2d 823 and *City of San Mateo* v. *Mullin, supra,* 59 Cal.App.2d 652, 658-659. The point is without merit.

The judgment in each case is reversed with instructions to make and enter judgment not inconsistent with the views hereinbefore expressed.

Wood (Parker), Acting P. J., and Vallée, J., concurred.

A petition for a rehearing was denied September 26, 1955, and the petition of respondent city of Los Angeles for a hearing by the Supreme Court was denied November 3, 1955.