(No. 36473.—

Roy G. WILCOX *et al.,* Appellants, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed November 30, 1961.—Modified on motion January 17, 1962.*

OLSEN & CANTRILL, of Springfield, and GRAY, MC-INTIRE, PETERSEN & ACKMAN, of Kankakee, (HAROLD M. OLSEN, and DONALD GRAY, of counsel,) for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROSS, MCGOWAN & O'KEEFE, of Chicago, (CLARENCE H. ROSS, JOSEPH H. MUELLER, JOHN W. MCNULTY, EDWIN W. SALE, and EDWARD V. HANRAHAN, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal by plaintiffs from an order of the circuit court of Kankakee County, affirming an order of the Illinois Commerce Commission, entered pursuant to the "Gas Storage Act" of 1951. (Ill. Rev. Stat. 1959, chap. 104, par. 1 *et seq.*) Under that act a corporation engaged in the distribution, transportation or storage of natural gas which is intended in whole or in part, for ultimate distribution to the public in Illinois, may have the right of eminent domain, provided that such corporation "is regulated or subject to regulation under either the laws of the State of Illinois or the laws of the United States." However, such right of eminent domain for the acquisition of property for the underground storage of gas cannot be exercised until such corporation shall have obtained an order of the Illinois Commerce Commission approving the proposed storage project. The act provides for notification to land owners, whose property rights are affected and requires the Commerce Commission to make certain findings with respect to the project and the order must contain certain restrictions

and conditions which reasonably protect private property, the rights of owners of the lands lying within the storage area and any public resources of the State.

Pursuant to the Gas Storage Act, the Natural Gas Storage Company of Illinois, an Illinois corporation, filed an application and obtained an order of the Commerce Commission on May 21, 1952, approving a storage project in the Ironton-Galesville geological formation, in an area at Herscher, in Kankakee County, Illinois. Under that order and by virtue of voluntary grants or easements which the Natural Gas Storage Company had obtained from the land owners, a storage field was developed in the Ironton-Galesville reservoir. Apparently no appeal or objection was taken from that 1952 order. On November 28, 1958, Natural Gas Storage Company filed a supplemental application with the Commerce Commission for the approval of an extension of its storage at Herscher to include the storage of gas in the Mt. Simon formation, a geological stratum lying about 600 feet below the Ironton-Galesville and more than 2,000 feet below the surface of the earth. It is from the order of the Commerce Commission approving the Mt. Simon project that this appeal is taken.

It is the theory of plaintiffs that the Illinois Commerce Commission did not have the jurisdiction to enter said supplemental order; that the order is void and should be set aside; that the supplemental order is not supported by record facts nor are the findings of said order supported by the record; that the storage of gas is a local project not contemplated by the Federal "Natural Gas Storage Act;" and that regulation by a competent administrative agency is a prerequisite to an order of approval under said Illinois Storage Act; that public need for the project is not shown by the record; and that the record fails to disclose a public use.

Prior to the application in 1952 for the Ironton-Gales-

ville reservoir operation, Natural Gas Storage Company had obtained a certificate of public convenience and necessity from the Federal Power Commission to construct facilities and operate as a natural gas company for the transportation, storage and delivery of natural gas under the Natural Gas Act. (15 U.S.C.A. 717.) Similarly, prior to the Mt. Simon project, Natural Gas Storage Company obtained a certificate of public convenience and necessity from the Federal Power Commission authorizing the construction of facilities and development of a storage reservoir in that geological formation. The gas which Natural Gas Storage Company stores is received from interstate pipelines for the account of distributing companies in Illinois and Indiana.

We feel that the interstate character of the gas stored by Natural Gas Storage Company is clear. The movement of natural gas in interstate commerce does not cease its interstate journey merely because it passes into a State where it is finally consumed. (*Federal Power Commission* v. *East Ohio Gas Co.* 338 U.S. 464, 467.) While local distribution of interstate gas may be subject to State control, *Pennsylvania Gas Co.* v. *Public Service Commission,* 252 U.S. 23, 28, the wholesale distribution of interstate gas has always remained interstate in character. *Illinois Natural Gas Co.* v. *Central Illinois Public Service Co.* 314 U.S. 498, 508. The record shows that Natural Gas Storage Company delivers the stored gas to an interstate pipeline and, in that sense, is analogous, to a wholesale distributor. Likewise storing of gas does not change its interstate character. We said in *Mississippi River Fuel Corp.* v. *Hoffman,* 4 Ill.2d 468 at page 472: "Appellants devote a considerable part of their argument to a discussion of an attempt which is being made by appellee to create a gas storage field in Illinois in an exhausted gas field in Monroe County. It is enough to say that even if appellee had fully succeeded in this endeavor and if some of the gas sold to its industrial customers had

for a time been held in storage in the places mentioned, it would not, in our opinion, detract in any way from the interstate character of the whole transaction."

There is also no substantial question concerning the regulation of Natural Gas Storage Company by the Federal Power Commission under the "laws of the United States." The tariffs of Natural Gas Storage Company are filed with and approved by, the Federal Power Commission; periodic reports are required by that Commission and the detailed certificates of public convenience and necessity issued to Natural Gas Storage Company by the Federal Power Commission clearly demonstrate that it is regulated under the federal law. Consequently, there is no justification for the plaintiffs' contention of lack of jurisdiction in the Illinois Commerce Commission under the Gas Storage Act.

Therefore, we are of the opinion that the jurisdiction of the Illinois Commerce Commission was properly invoked for the approval of the project and the right to exercise eminent domain. No question is raised as to notice either by publication or by registered mail, to the land owners whose property is sought to be condemned.

Turning to the order of the Commerce Commission itself, we are of the opinion that it complies with the requirements of the Gas Storage Act. The Commerce Commission's order not only contains specific findings on each of the statutory items, as well as the restrictive conditions of the statute, but is further supported by a recital of the case and the evidence. An examination of the latter discloses that there was much expert evidence produced as to the feasibility of the Mt. Simon formation for a gas storage project. Plaintiffs' counsel admit the qualifications of Natural Gas Storage Company's experts who testified in favor of the project. No contrary testimony was offered. Neither the Commerce Commission nor the court is required to ignore such expert testimony. It is the function of the Commerce Commission to use its expertise in the evalua-

tion of such expert testimony and we cannot say that the Commission has failed in such appraisal.

The evidence submitted by the expert witnesses was not only subject to the scrutiny of the Commerce Commission but also of the various other State agencies including the Department of Mines and Minerals, Department of Public Health, State Water Survey, and the Oil and Gas Division of the State Geological Survey. The order of the Commerce Commission recognizes the possibility of gas leakage, as mentioned by the Department of Mines and Minerals although the department actually does not expect any to occur, and points out that Natural Gas Storage Company has facilities to detect, observe and control any leakage which may occur in either the Ironton-Galesville or the Mt. Simon formations. The order specifically provides that any increase in leakage should be reported to the Commerce Commission, the State Water Survey and the Department of Mines and Minerals, within twenty-four hours and that if the vent gas gathering system should not be able to control the leakage, Natural Gas Storage Company shall cease to inject gas into the storage dome.

Gas storage fields are no novelties. They exist in more than a dozen states and were "well known" in 1955 when this court delivered its opinion in *Mississippi River Fuel Corp.* v. *Hoffman*, 4 Ill.2d 468. Likewise, the public benefit of gas storage fields is also well known. Storing gas in the area of the ultimate market during the warm summer months when the supply of gas from the fields of the south and southwest via the pipelines is plentiful, for use during the winter when peak requirements are needed, enables more of the public to be furnished natural gas than otherwise would be possible. It is also evident that gas storage enables the gas companies to store the gas for more beneficial uses than to be forced to "dump" the gas in the summer time. The evidence shows that 85% of the gas stored by Natural Gas Storage Company will be used by municipalities and

public utilities distributing gas for local consumption in areas in the State of Illinois having a total population of 5,500,000. It further shows that storage gas from the Ironton-Galesville reservoir has enabled more than 150,000 residential users to obtain gas space heating. The Commission found that public convenience and necessity would be served by the additional storage project and we cannot say that the Commission's finding is either in error or lacks evidentiary support.

The plaintiffs contend that the Commerce Commission's order finds that Natural Gas Storage Company holds easements for storage of gas in the Mt. Simon reservoir, underlying all the lands except that of 675 acres and that there is no evidence to support this finding. Plaintiffs point out that counsel for Natural Gas Storage Company made objections during the cross-examination of a company witness relating to the construction of any easements on the basis that such matters involve questions of title which the Commerce Commission cannot try. Plaintiffs say that since the entire storage project encompasses approximately 15,000 acres, proper notice was not given all of the land owners against whom the order is effective because the proof of service is limited to the owners of 675 acres.

From the record it appears that the Commerce Commission did not actually find that Natural Gas Storage Company held easements in all but 675 acres. In the seventeen specific findings of the order, no such finding of fact is made. In the preliminary recitals of the order, however, the Commerce Commission states: "Applicant *represents* that it has heretofore acquired rights, easements and estates in all of the land in said storage area by voluntary grants from the owners thereof, under which grants Applicant has the right to introduce gas into the Mt. Simon formation, except in respect to approximately 675 acres thereof." (Italics supplied.)

In our opinion the Gas Storage Act does not require the

Commerce Commission to make any finding as to the extent that Natural Gas Storage Company has deeds or easements to part of the land involved in the storage project. Whether or not the easements the company hold have actually granted rights to the Mt. Simon formation is not before us and we express no opinion on any such questions. Clearly the Commerce Commission does not have the power to determine questions of title and was not called upon to do so. The Gas Storage act states that the order of the Commerce Commission "shall not be operative against any privately owned interest in any tract of land, unless notice of said hearing be sent at least 21 days prior thereto" to the land owner. The purpose of the order of the Commerce Commission is to authorize the right of condemnation, and, as the Act provides, such right cannot be operative except against lands whose owners have been notified. If Natural Gas Storage Company owned all of the land covered by the storage project, no order of the Commerce Commission would be necessary, as no condemnation would be involved. Similarly, if the storage company had easements from all of the land owners no order would be required.

What we say here is confined to the Gas Storage Act and has no relation to the requirements of the Illinois Public Utilities Act or the Natural Gas Act, whichever may be applicable, to obtain a certificate of public convenience and necessity for the initial undertaking. The evidence shows that Natural Gas Storage Company has a certificate from the Federal Power Commission which the Commerce Commission has recognized and accepted. We are not called upon to make a determination of whether Natural Gas Storage Company is or is not subject exclusively to the Natural Gas Act. Jurisdiction under the Gas Storage Act for the issuance of the order here on appeal is conferred if the corporation "is regulated or subject to regulation under *either* the laws of the State of Illinois or the laws of the United States." Consequently, there is no necessity to make any

ruling as to the binding character of the Federal Power Commission's action in regulating Natural Gas Storage Company.

What we have said before disposes of the contention of the plaintiffs that this project is a private matter rather than a public use. There is nothing in the Gas Storage Act which prevents its use because the project is on an "experimental basis." Whether the project should first be tried on an experimental basis is a matter for the discretion of the regulatory agency and it would seem to us that testing such projects as gas storage on a probatory basis is exercising sound discretion.

Finally, the record amply supports the Commerce Commission's findings regarding the protection of private property, water supplies and natural resources. The record of the original proceedings before the Commerce Commission in 1952 was incorporated by reference as part of the record in this supplemental proceeding relating to the Mt. Simon storage project and has been abstracted for the benefit of the court. The detailed testimony on the safety and feasibility of the initial Herscher project, when considered together with the specific testimony on the Mt. Simon project in this supplemental proceeding, provides ample evidence on which the Commerce Commission could make its determination. The Commerce Commission's order specifically provides that the conditions contained in the order entered in the same docket number on May 21, 1952, shall remain in full force and effect and apply to the extended storage project including the Mt. Simon formation. In the original proceedings, evidence was presented by witnesses from the various State agencies and while they did not give further evidence in this supplemental proceeding on the Mt. Simon, they were notified of the proceeding and undoubtedly would have done so if they questioned the undertaking. The evidence offered by Natural Gas Storage Company clearly supports the safety

and feasibility of the Mt. Simon project. The protection which has been afforded the public during the past six to seven years of the operation of the Ironton-Galesville storage reservoir will be equally available in guarding the public on the Mt. Simon project.

We are of the opinion that the order of the circuit court of Kankakee County, which upheld the order of the Commerce Commission, was correct and should be affirmed.

*Order affirmed.*